**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

|  |  |
|---|---|
| GEORGIA RENEWABLE POWER, LLC, GRP-MADISON, LLC, AND GRP-FRANKLIN LLC, <br><br>        Plaintiffs, <br><br> vs. <br><br> AMEC FOSTER WHEELER INDUSTRIAL POWER COMPANY, INC.; AMEC FOSTER WHEELER USA CORPORATION; AMEC FOSTER WHEELER NORTH AMERICA CORP.; AND WOOD GROUP USA, INC. <br><br>        Defendants. | **COMPLAINT AND JURY DEMAND** |

Georgia Renewable Power, LLC, GRP-Madison, LLC, and GRP-Franklin LLC, (collectively "GRP" or "Plaintiffs"), by and through their undersigned counsel, for its Complaint against Defendants Amec Foster Wheeler Industrial Power Company, Inc. ("AFWIPC"), Amec Foster Wheeler USA Corporation, Amec Foster Wheeler North America Corp., and Wood Group USA, Inc. (collectively, "AFW" or "Defendants," and together with GRP, the "Parties"), hereby allege as follows:

## NATURE OF ACTION

1.    This Action involves the negligent performance of Defendants' duties as the primary subcontractor on two power plants owned by Plaintiffs, and the subsequent actions by

Defendants to escape liability for their poor performance by covering up the details and corrupting the contractually agreed process to resolve the resulting problems created at those plants.

2.      GRP hired MasTec Power Corporation ("MasTec") as the Engineering, Procurement, and Construction ("EPC") Contractor to build two new twin wood-fired biomass power plants in Georgia: a plant owned by GRP-Madison Plant in Colbert, GA (the "GRP-Madison Plant"), and a plant owned by GRP-Franklin in Carnesville, GA (the "GRP- Franklin Plant" and collectively with the GRP-Madison Plant, the "Plants"). MasTec entered into purchase order subcontracts with Defendant AFWIPC to perform certain design and construction work when building the Plants (for each Plant, the "Madison Project" and "Franklin Projects," and collectively, the "Projects"). AFWIPC's duties included responsibility for design, procurement, and construction of key components of the Plants such as the Boilers, Boiler Feedwater Pumps, and Economizer Tubes. AFWIPC also provided warranties for its work, as required by the contracts governing the projects.

3.      During the design phase, AFWIPC's parent companies directed that work on the Projects be transferred away from the original team based near Atlanta, Georgia, to be taken over by a separate team within the larger AFW corporate organization. Following the transfer, AFW materially changed the designs to cut costs. The Boiler heights were reduced, with lost surface area to be compensated by "wing-walls" inside the Boilers, in a design unusual for the type of plants involved in the projects. Other novel designs that were a poor fit with the Plants as a whole were chosen to avoid late fees and other costs, despite concerns expressed by suppliers and the original design team in comparison to more appropriate options.

4.      Following initial construction of the Plants, it became clear during testing that the Plants would not operate effectively as designed. As GRP and MasTec negotiated potential

solutions to the problems that had been identified, Defendants took the lead in developing design modifications. These design modification were eventually incorporated into a settlement agreement between GRP and MasTec, which also included defined processes involving Defendants to confirm that the modifications would resolve the problems and satisfy delivery of functional plants according to the relevant agreements (the "GRP-MasTec Settlement Agreement"). The GRP-MasTec Settlement Agreement also carried forward existing warranty obligations, and included delivery of a final payment to MasTec and conditional releases if the terms of the agreement were satisfied. Defendants also entered into separate agreements with MasTec to release liabilities in exchange for their performance of the modifications and other obligations under MasTec's agreement with GRP.

5.      During construction of the Plants, AFWIPC and its parent and affiliate companies merged with the John Wood Group organization ("Wood"). Problems with AFWIPC's work continued to be managed by the Wood organization as a whole, including its affiliate entities and legacy Amec Foster Wheeler entities, without delineation of responsibilities or activities among AFWIPC or any other specific affiliated entities.

6.      In proposing the modifications and processes included in the GRP-MasTec Settlement Agreement, Defendants concealed material information about the root causes of the problems that the GRP-MasTec Settlement Agreement attempted to resolve, including concerns that had been expressed regarding design and procurement decisions that contributed to flaws in performance. Defendants knew that information about prior concerns, decisions made to change the designs, and other information affecting the root causes of the problem was material to evaluating the success of modifications that Defendants developed, but concealed this information so that GRP would accept the modifications as solutions in the GRP-MasTec Settlement

Agreement.  Based on their knowledge, which was not shared with GRP, Defendants knew that it was less likely than presented that the modifications would satisfy the problems long-term, and knew that the modifications were likely to cause other additional problems not discussed in their proposals.  However, Defendants presented the modifications as permanent fixes to evade liability for their poor performance as design subcontractor.  Defendants also concealed other latent issues that they were aware of that were not specifically identified in the GRP-MasTec Settlement Agreement.

7.    Following execution of the GRP-MasTec Settlement Agreement, Defendants further sought to corrupt agreed-upon processes in the GRP-MasTec Settlement Agreement in order to further hide problems and avoid liability.  Defendants manipulated required testing of the boiler modifications and improperly communicated *ex parte* with "independent engineers" intended to be neutrals, sending them their own conclusions to be confirmed, without GRP's knowledge.  Defendants also refused to adequately address warranty items for which they were responsible or to share the results of investigations into defective plant components.

8.    As time has passed, the poor quality of Defendants' work and inadequacy of their modifications has been increasingly revealed.  The Plants have continued to experience failures, and additional latent defects that would or should have been known to Defendants have been uncovered.  Defendants' poor work, attempt to cover up problems with sham fixes, and refusal to cooperate to complete meaningful solutions has forced GRP to expend millions of dollars to complete its own repairs.  Such repairs have not resolved all problems at the Plants, and the failures

and other actions of Defendants have hampered performance at the Plants and degraded their long-term viability.

## THE PARTIES

9.      Plaintiff GRP-Madison, LLC is the Owner of a biomass power plant in Madison County, Georgia.  GRP-Madison, LLC is a limited liability company that is a citizen of Florida based on the citizenship of its members.  GRP Borrower, LLC is the sole member and 100% owner of GRP-Madison, LLC.  GRP HoldCo, LLC is the sole member and 100% owner of GRP Borrower, LLC.  GRP Operating, LLC is the sole member and 100% owner of GRP HoldCo, LLC. Georgia Renewable Power, LLC is the sole member and 100% owner of GRP Operating, LLC.

10.      Plaintiff GRP-Franklin, LLC is the Owner of a biomass power plant in Franklin County, Georgia.  GRP-Franklin, LLC is a limited liability company that is a citizen of Florida based on the citizenship of its members.  GRP Borrower, LLC is the sole member and 100% owner of GRP-Franklin, LLC.  GRP HoldCo, LLC is the sole member and 100% owner of GRP Borrower, LLC.  GRP Operating, LLC is the sole member and 100% owner of GRP HoldCo, LLC. Georgia Renewable Power, LLC is the sole member and 100% owner of GRP Operating, LLC.

11.      Plaintiff Georgia Renewable Power, LLC is a limited liability company that is a citizen of Florida based on the citizenship of its members.  Greenfuels Energy, LLC is the sole member and 100% owner of Georgia Renewable Power, LLC.  Raymon Bean, an individual who is domiciled in Baker County, Florida and a citizen of Florida, is the sole member and 100% owner of Greenfuels, Energy, LLC.

12.      Upon information and belief, Defendant Amec Foster Wheeler Industrial Power Company, Inc. is a corporation that is incorporated in Delaware and has its principal place of business in Hampton, New Jersey.

13.     Upon information and belief, Defendant Amec Foster Wheeler USA Corporation is a corporation that is incorporated in Delaware and has its principal place of business in Houston, Texas.

14.     Upon information and belief, Respondent Amec Foster Wheeler North America Corp. is a corporation that is incorporated in Delaware and has its headquarters and principal place of business in Hampton, New Jersey.

15.     Upon information and belief, Defendant Wood Group USA, Inc. is a corporation that is incorporated in Texas and has its principal place of business in Houston, Texas.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists among the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiffs are citizens of Florida based on the ownership of their respective members as limited liability companies.  Defendants are citizens of Delaware, New Jersey, and Texas based on their incorporation and principal places of business. The Plaintiffs seek damages of at least $250,000,000.00.

17.     Venue in the Middle District of Georgia is proper under 28 U.S.C. § 1391(b)(2) and Local Rule 3.4 because a substantial part of the events giving rise to the claim occurred in Franklin and Madison Counties, Georgia, which are located within this District and this division.

## FACTS COMMON TO ALL COUNTS

**A.     Defendants' Work as Subcontractor for GRP's Plants**

18.     Georgia Renewable Power, LLC is a renewable energy company operating in the Southern United States.  It was founded in 2013 with the purpose of both retrofitting older power facilities to run on renewable energy and constructing new power facilities designed to run on

biomass from the outset.  Biomass power facilities use organic materials like dead wood and animal waste to create electricity or heat.

19.     Wood-fired power plants combust organic fuel. The heat generated by this combustion is used to boil water and generate high pressure steam. This steam is piped into a steam turbine generator to produce electricity. The high pressure steam expands in the generator, rotating the generator and creating electrical energy. Low pressure steam then exits the generator, is condensed to water in a condenser, and is recycled back into the boiler.

20.     GRP engaged MasTec as EPC Contractor pursuant to two Engineering, Procurement, and Construction contracts, which are both dated July 28, 2017 (the "EPCs"), to build the two biomass power Plants in Georgia.  The Plants were designed to meet local power needs and for GRP to satisfy its own agreements to generate power.

21.     Purchase Order subcontracts between MasTec and AFWIPC, which included specifics for the design and delivery of the Boilers and other components at each Plant, were executed on or about September 7, 2017.  Construction began on the Plants in January 2018.

22.     Per its agreements with MasTec, AFWIPC was specifically responsible for the design, procurement, and/or construction of several key components at the Plants and/or modifications required to address performance of the components, including, but not limited to, the Plants' Boiler, Boiler Feedwater Pumps, Air Heaters, and Economizers.  AFWIPC was also required to provide services during commissioning (the initial testing period following initial mechanical completion of construction) at the Plants.

23.     AFWIPIC also provided subcontractor warranties for its work, which MasTec was obligated to obtain from AFWIPC to satisfy the terms of Article 14.4 of EPCs.  Article 14.4 also

dictated that any subcontractor warranties in existence at the end of the contractually defined Primary Warranty Period would be assigned to the Owner.

**B.    Defendants Breach Their Professional Duties as Design and Construction Engineers**

24.    Although responsibility for work on the Projects was originally handled by AFWIPC's local engineers in Georgia, AFWIPC's parent companies directed that it be transferred to a separate group within the AFW corporate organization.  Plant designs were then modified to cut costs, to the detriment of the Plants.  These changes, and the resulting detrimental effects, were dictated and managed by the corporate parents and affiliates of AFWIPC, often over the objections of the team that was initially responsible for the Projects.

25.    Following this change in responsibility within the Amec Foster Wheeler corporate organization, AFW was grossly negligent in its performance of the work at the Plants, which resulted in numerous problems identified during or shortly after the Plants' commissioning.

26.    For example, the Plants' Boilers employed an unsuitable design for this type of plant.  In order to increase their profit margins, AFW designed Boilers that were too short in height, with the resulting lack of surface area compensated for by internal "wing-walls." This design resulted in problems with steam temperature control, and the Boilers were unable to achieve complete combustion.

27.    The Boiler Feedwater Pumps also used an unsuitable prototype design, despite concerns raised by AFW's supplier and original team members responsible for the Projects.  AFW selected the unsuitable design over appropriate proposals to save money, in part by avoiding late delivery fees.

28.    AFW did not conduct appropriate quality assurance and quality control on its suppliers and vendors, which resulted in substantial defects in the Economizer Tubes, Boiler Feedwater Pumps, and other areas.

29.    AFW's negligent work fell well short of the standard of care for design and construction engineering professionals, and led to delivery of Plants to GRP that would not function as designed, and which experienced numerous failures early in their life, well in excess of what would be expected in the industry.

30.    In late 2017, after the Plant designs had been completed and the EPCs executed, AFWIPC and its parent and affiliate companies were acquired in a merger with John Wood Group, PLC and its affiliate organization.  The Wood organization, including the legacy corporate parents of AFWIPC and affiliated Wood entities, continued to dictate the response to issues at the Plants for which AFW was responsible as the many defects in its work were uncovered.  AFWIPC, and its parents and affiliates dictating the response, did not adequately remediate the failures in AFWIPC's professional work consistent with industry standards.

### C.    Defendants Misrepresent and Conceal Information to Induce GRP to Enter the GRP-MasTec Settlement Agreement

31.    After GRP withheld final payment to MasTec and refused to certify substantial completion of the Plants due to their numerous defects, Wood/AFW participated in negotiating a resolution of the dispute between GRP and MasTec.  Wood/AFW developed modifications to resolve the problems identified with the Boilers and Boiler Feedwater Pumps and submitted a test protocol intended to confirm that the modifications did not result in a material reduction in the Boilers' efficiency.

32.    During negotiations, Wood/AFW withheld material information from GRP regarding the root causes of the problems experienced at the Plants, for the purpose of inducing

GRP to enter into a settlement agreement with MasTec.  AFW sought to induce GRP to enter into a settlement agreement with MasTec for the purpose of obtaining outstanding payment from GRP to MasTec and eliminating any liability of Wood/AFW to either MasTec or GRP.

33.    Specifically, Wood/AFW knew that information regarding concerns expressed with the original design and procurement of the Boilers and Boiler Feedwater Pumps was material to GRP when evaluating the modifications developed by Wood/AFW, and that information known regarding root causes of the problems was essential to GRP understanding and evaluating viability of the modifications when deciding whether to enter the GRP-MasTec Settlement Agreement.

34.    Wood/AFW also knew, based on information it did not share with GRP, that the Boiler modifications developed by Defendants were unlikely to sufficiently remediate the deficiencies in the Boilers.  Wood/AFW knew that problems with steam temperature control were unlikely to be fully resolved, that the Boiler efficiency would likely be negatively affected, and that the modifications would likely result in other material detrimental effects to the Boilers, such as an increase in carbon in ash levels that would have material and ongoing degrading effects to performance, reliability, and longevity.  Wood/AFW also knew that the wing-wall modifications developed to resolve temperature control would likely cause circulation problems further impeding performance, reliability, and longevity, and that the poor quality of exhaust stack material and construction would likely lead to degradation uncharacteristically early in the life of the Plants.  Wood/AFW was obligated to share this information with GRP, and to share material information regarding design flaws that the modifications were developed to resolve, as part of its central role in proposing modifications and negotiating resolution of disputes over problems at the Plants, but failed to disclose material information to GRP during settlement negotiations to induce GRP to enter a settlement agreement with MasTec.

35.     Wood/AFW knew, based on information it did not share with GRP, that the Boiler Feedwater Pump modifications developed by Defendants were flawed and were unlikely to sufficiently remediate the deficiencies in the Boiler Feedwater Pumps.  Wood/AFW's supplier expressed concern to Wood/AFW that the modifications were an inappropriately novel fix that was beyond the scope of the original order to the supplier and would not be sufficiently compatible with the Plants.  Wood/AFW knew based on withheld information about the flawed design and root causes of the failures that the Boiler Feedwater Pumps were still unlikely to operate successfully long-term after being modified, and that their performance would result in negative downstream effects at the Plants.  Wood/AFW was obligated to share this information with GRP, and to share material information regarding design flaws that the modifications were developed to resolve, as part of its central role in developing modifications and negotiating resolution of disputes over problems at the Plants, but failed to disclose material information to GRP during settlement negotiations to induce GRP to enter a settlement agreement with MasTec.

36.     Wood/AFW knew that other information on warranties had been withheld from GRP.  For example, Wood/AFW had "closed" a warranty issue identified based on Economizer Tube leaks, even though inspection revealed that the problem was more pervasive and not actually resolved.  Wood/AFW was obligated to share such reports and information on warranty issues with GRP as part of both its warranty obligations and its central role in developing modifications and negotiating resolution of disputes over problems at the Plants, but failed to disclose this information from GRP during settlement negotiations as part of its efforts to induce GRP to enter a settlement agreement with MasTec.

37.     Wood/AFW knew that unaddressed defects with the Plant Air Heaters were affecting Boiler performance, but did not address this issue in the modifications or associated test

procedures it developed, despite being obligated to do so as part of its central role in developing solutions to the problems at the Plants during settlement negotiations.

38.    GRP entered into the GRP-MasTec Settlement Agreement on June 29, 2020.  The GRP-MasTec Settlement Agreement includes releases contingent on adequate performance, including releases of MasTec's subcontractors.  Wood/AFW's Boiler Modification Test protocol is incorporated into the GRP-MasTec Settlement Agreement to confirm certain elements as part of determination of the adequate success of Boiler modifications, which were to be performed by Wood/AFW on behalf of MasTec, along with the Boiler Feedwater Pump modifications.  MasTec also agreed to continue its warranty obligations, many of which involved warranties obtained from Wood/AFW to benefit GRP pursuant to MasTec's obligation under Article 14.4 of the EPCs. Warranty registers attached to the Settlement Agreement listed AFW as the party directly responsible for certain ongoing warranty items.

39.    In connection with and coinciding with the timing of the GRP-MasTec Settlement Agreement, Wood/AFW entered into separate settlement agreements with MasTec (the "AFW-MasTec Settlement Agreements") confirming that it would perform the modifications it developed and other duties assigned to Wood/AFW and referenced as part of the GRP-MasTec Settlement Agreement.

**D.    Defendants Corrupt the Settlement Test Procedures and Otherwise Fail to Perform Their Obligations Pursuant to the Agreements Between the Parties**

40.    Wood/AFW inadequately performed the modification obligations designated to it through MasTec pursuant to the GRP-MasTec Settlement Agreement and the AFW-MasTec Settlement Agreements, and actively caused material breaches of other provisions of the GRP-MasTec Settlement Agreement through its improper actions undertaken on MasTec's behalf.

41.    For example, Wood/AFW presented data manipulated without explanation from a purported "test" of the Madison Plant Boiler in August 2020. Wood/AFW represented to GRP and the "third-party engineer" designated in the GRP-MasTec Settlement Agreement (who had been proposed by Wood/AFW) that it was running preliminary tuning for the test and that the actual test runs would take place at a later date once tuning was completed. Wood/AFW then manually operated the boiler under conditions intentionally altered from the contract and "cherry-picked" data from the tuning operation off the Plant DCS systems, presenting it to the "third-party" engineer as legitimate test data.

42.    Contrary to the process described in the GRP-MasTec Settlement Agreement, Wood/AFW engaged in *ex parte* communications with the "third-party" engineers, including by sharing a Boiler Modification Test report and purported data concluding that the "test" had passed requirements at Madison with the "third-party" engineer designated to evaluate the Boiler Modification Test process, to the exclusion of GRP. This report was provided without GRP's participation or knowledge, before the "third-party engineer" had observed a legitimate test run with the knowledge of GRP or had the opportunity to reach independent conclusions prior to being provided conclusions pre-determined by Wood/AFW.

43.    Wood/AFW also improperly communicated *ex parte* with the "third-party engineer" designated to evaluate the Boiler Feedwater Pump modifications, and improperly failed to disclose comments from the OEM (original equipment manufacturer) supplier of the Boiler Feedwater Pumps that were critical of Wood/AFW's modifications.

44.    When making Plant modifications pursuant to the GRP-MasTec Settlement Agreement and the AFW-MasTec Settlement Agreements, Wood/AFW supervised construction

of the Boilers in a manner that was materially different from the designs presented to GRP, to the detriment of efficiency and operation of the Plants as a whole.

45.    Wood/AFW continued to withhold information applicable to the completion of warranty obligations, even when such information was directly requested by GRP.  For example, Wood/AFW withheld reports from its investigation of Economizer Tube leaks, even when GRP identified specific reports that should be disclosed and presented evidence that Economizer Tube leak problems had been improperly "closed" by Wood/AFW.  Wood/AFW also refused to work cooperatively with GRP to investigate and remediate continued problems, instead often informing GRP of a last-minute procedure that was facially inadequate, ignoring GRP's comments, and then claiming that the issue had been "closed" without evidence.

46.    Wood/AFW otherwise failed to satisfy its warranty obligations in a commercially reasonable manner, including by failing to adequately communicate with GRP on the schedule or method of attempts to close warranty items and by failing to complete obligations in a commercially reasonable time, without justification.

47.    All of Wood/AFW's improper actions following the identification of numerous material problems in its Plant design, procurement, and construction were undertaken for the purpose of evading liability as subcontractor and warrantor, and of avoiding more costly fixes that were required to adequately address the fundamental problems with the Plants.

48.    Wood/AFW's concealments in proposing modifications and procedures during the negotiation of the GRP-MasTec Settlement Agreement were intended to obtain releases of liability through relatively limited work, and to reduce GRP's options to further seek compensation for fundamental problems and latent defects as the Plants continued to demonstrate increasing problems far ahead of what would be expected in a typical plant as contracted for by GRP.

49.     Wood/AFW's manipulations of testing, and its corruption of the third-party engineer review process were likewise intended to conceal fundamental flaws and concoct a false "confirmation" of success in modifications in order to escape further, more costly liability and obligations to correct the flawed work.

50.     Wood/AFW's concealment and refusal to address other items subject to its warranties, which are ongoing, have also been intended to escape liability and obligations to adequately correct material problems at the Plants.

51.     In addition to failing to properly remedy Wood/AFW's prior defective work, the improper actions of Wood/AFW described above related to the GRP-MasTec Settlement Agreement have also damaged GRP by contributing to an ongoing dispute with MasTec regarding satisfaction of MasTec's obligations under the Settlement Agreement, for which GRP paid substantial consideration.

## COUNT I

### Negligent Design

52.     The allegations contained within paragraphs 1 through 51 are incorporated herein by reference as if fully set forth herein.

53.     Defendants had a duty to GRP to exercise reasonable care when designing the components of the Plant purchased by MasTec for GRP's benefit.

54.     Defendants designed Boilers with an inadequate height that was unique for application to biomass power plants, which was compensated for by experimental wing-walls in the Boiler.  As a result, during commissioning, the Boilers failed to maintain superheat temperature and generated ash with high carbon levels due to failure to achieve complete combustion.

55.    Defendants also requested prototype custom-built designs for the Boiler Feedwater Pumps that were inappropriate for the Plants and failed repeatedly from the beginning of Plant operations.

56.    Defendants then misrepresented the true extent of their negligence when these items failed to perform during Plant commissioning.

57.    As part of negotiating remediation of the poor designs to be incorporated into the Settlement Agreement between GRP and MasTec, Defendants developed inadequate modifications that Defendants knew were likely to fail to resolve the problems and would make some issues worse, which has led to continued poor Plant performance, shutdowns, and degradation damaging the expected future performance of the Plants.

58.    Defendants also did not maintain and/or provide stamped drawings by an appropriately credentialed engineer when implementing the modifications.

59.    Defendants' performance of the design work that it had undertaken on behalf of GRP breached the ordinary standard of care for design and/or engineering professionals in the power plant construction industry.

60.    The duties and breaches of AFWIPC in its design work were directed and shared by its parent and affiliate defendants.  AFWIPC's parents directed that the work for which AFWIPC contracted was transferred to a separate group within the AFW corporate organization, who then directed changes and other failures as alter egos of AFWIPC, without observation of distinct corporate forms or separation of work assignments and responsibility between distinct entities.  Following the merger between the Amec Foster Wheeler and John Wood Group organizations, additional design modifications developed to purportedly remediate work for which AFWIPC had contracted continued to be directed by parent and affiliate entities within the John

Wood Group organization, which continued to act as alter egos of AFWIPC without observation of distinct responsibility between corporate entities.

61.    As a result of Defendants' breach of its duties in the design of the Madison and Franklin Boilers, Plaintiffs' business has been harmed in an amount to be proved at trial.

62.    Plaintiffs have been damaged by having to incur millions of dollars in costs for the repair of the Plants as a result of Defendants' negligent design.

63.    Repairs undertaken by GRP have not resolved all problems experienced at the Plants.  The output of the Madison and Franklin facilities has been significantly lowered.  The Plants continue to experience performance problems stemming from Defendants' breach, which has led to costly shut-downs and damage to the long-term health and viability of the Plants.

64.    Attached as Exhibit A is a certificate of merit in support of this Count, pursuant to O.C.G.A. 9-11-9.1.

## COUNT II

### Negligent Construction

65.    The allegations contained within paragraphs 1 through 64 are incorporated herein by reference as if fully set forth herein.

66.    Defendants had a duty to GRP to ensure that construction and modification of the components of the Plant purchased by MasTec for GRP's benefit in a workmanlike manner.

67.    The Plant components for which construction or modification was supervised by Defendants were not installed to API or other industry standard specifications.  Defendants did not implement adequate Quality Control or Quality Assurance procedures for the construction work for which they were responsible.

68.     When responding to inquiries from GRP about apparent defects in the construction and/or modifications, Defendants misrepresented information about problems with the work, refused to share information in their possession related to the construction, and failed to remediate construction defects.

69.     Defendants' performance of the construction work that they had undertaken on behalf of GRP breached the ordinary standard of care for professionals responsible for construction in the power plant construction industry.

70.     The duties and breaches of AFWIPC in its design work were directed and shared by its parent and affiliate defendants.  AFWIPC's parents directed that the work for which AFWIPC contracted was transferred to a separate group within the AFW corporate organization, and then directed changes and other failures as alter egos of AFWIPC, without observation of distinct corporate forms or separation of work assignments and responsibility between distinct entities.  Following the merger between the Amec Foster Wheeler and John Wood Group organizations, additional construction purportedly to remediate work for which AFWIPC had contracted continued to be directed by parent and affiliate entities within the John Wood Group organization, which continued to act as alter egos of AFWIPC without observation of distinct responsibility between corporate entities.

71.     This negligent construction has caused repeated shutdowns and required extensive repairs early in the life of the plants, and has damaged the expected functional longevity of the plants.

72.     As a result of Defendants' breach of their duties in the construction and development of the Madison and Franklin Plants, Plaintiffs' business has been severely harmed in an amount to be proved at trial.

73.     Plaintiffs have been damaged by having to incur millions of dollars in costs for the repair of the Plants as a result of Defendants' negligent design.

74.     Repairs undertaken by GRP have not resolved all problems experienced at the Plants.  The output of the Madison and Franklin facilities has been significantly lowered.  The Plants continue to experience performance problems stemming from Defendants' breach, which has led to costly shut-downs and damage to the long-term health and viability of the Plants.

75.     Attached as Exhibit A is a certificate of merit in support of this Count, pursuant to O.C.G.A. 9-11-9.1.

## .COUNT III

### Professional Negligence

76.     The allegations contained within paragraphs 1 through 75 are incorporated herein by reference as if fully set forth herein.

77.     Defendants' employees are "professional engineers," as defined by O.C.G.A. § 9-11-9.1(g)(21), and are licensed by the state of Georgia.  AFW is liable for its employees' actions and omissions.

78.     In designing the Franklin and Madison Plants, Defendants had a duty to GRP to exercise a reasonable degree of skill and care, consistent with the degree of skill and care ordinarily employed by engineers providing work for power plants.

79.     Defendants failed to exercise that degree of skill and care and misrepresented the flaws in its work, as detailed above.

80.     The duties and breaches of AFWIPC in its design work were directed and shared by its parent and affiliate defendants.  AFWIPC's parents directed that the work for which AFWIPC contracted was transferred to a separate group within the AFW corporate organization,

and then directed changes and other failures as alter egos of AFWIPC, without observation of distinct corporate forms or separation of work assignments and responsibility between distinct entities. Following the merger between the Amec Foster Wheeler and John Wood Group organizations, additional engineering proposals purportedly to remediate work for which AFWIPC had contracted continued to be directed by parent and affiliate entities within the John Wood Group organization, which continued to act as alter egos of AFWIPC without observation of distinct responsibility between corporate entities.

81. As a result of Defendants' breach of its duties in engineering work as part of development of the Madison and Franklin Plants, Plaintiffs' business has been severely harmed in an amount to be proved at trial.

82. Plaintiffs have been damaged by having to incur millions of dollars in costs for the repair of the Plants as a result of Defendants' negligent design.

83. Repairs undertaken by GRP have not resolved all problems experienced at the Plants. The output of the Madison and Franklin facilities has been significantly lowered. The Plants continue to experience performance problems stemming from Defendants' breach, which has led to costly shut-downs and damage to the long-term health and viability of the Plants.

84. Attached as Exhibit A is a certificate of merit in support of this Count, pursuant to O.C.G.A. 9-11-9.1.

### .**COUNT IV**

### **Fraud**

85. The allegations contained within paragraphs 1 through 84 are incorporated herein by reference as if fully set forth herein.

86.     Defendants knowingly made material misrepresentations and omissions to GRP as part of negotiations for the GRP-MasTec Settlement Agreement, upon which GRP relied, to induce GRP to enter the GRP-MasTec Settlement Agreement.  Defendants omitted information that they knew to be material, including information regarding root cause issues with the Boilers and Boiler Feedwater Pumps related to their original design and procurement, and concerns expressed by employees regarding flaws in the original design and procurement, when proposing modifications to GRP to address deficient performance of these Plant components.

87.     Defendants knew, based in part on information about the root causes of Plant defects not disclosed to GRP, that the primary goals of the modifications that it developed to be incorporated into the Settlement Agreement were unlikely to be successful, that the modifications were unlikely to resolve the problems that led to the GRP-MasTec Settlement Agreement, and that the modifications in some cases were likely to worsen the performance and reliability of the Plants.

88.     Specifically, Defendants knew that modifications to the Boilers were likely to have detrimental effects on Plant operation, including by causing circulation problems in the Boilers, and would not materially improve problems with combustion leading to high carbon in ash content, which causes poor Plant performance.

89.     Defendants also knew, based on information not disclosed to GRP regarding the selection of the Boiler Feedwater Pumps, that their Boiler Feedwater Pump modifications remained novel fixes that did not integrate well into the Plants and would be unlikely to resolve the long-term wear and tear caused by repeated Boiler Feedwater Pump failures.

90.     Defendants also failed to disclose information about warranty issues that they claimed to have "resolved" when contributing information regarding ongoing warranty obligations at the Plants.

91.     Defendants concealed all of this information from GRP for the purpose of obtaining a release as MasTec's subcontractor and seeking to escape further responsibility for its poor work.

92.     GRP reasonably relied on Defendants' material misrepresentations and omissions when entering the GRP-MasTec Settlement Agreement, and would not have entered the GRP-Settlement Agreement but for Defendants' material misrepresentations and omissions.  Despite the numerous problems unresolved at the time of the Settlement Agreement, GRP agreed to pay MasTec $42,000,000 to certify the substantial completion of the Plants, and to grant conditional releases, in part based on Defendants' representations regarding improvements that would be made as part of the GRP-MasTec Settlement Agreement.

93.     Defendants also improperly undermined the GRP-MasTec Settlement Agreement procedures by participating in improper *ex parte* communications with supposedly independent "third-party" engineers and presenting manipulated data and other information.  Defendants failed to disclose this conduct to GRP, at one point requesting that MasTec remove a reference to Defendants' selection of the third-party engineers from a summary of their findings.

94.     Although the liabilities that Defendants sought to escape were ostensibly those of AFWIPC, Defendants' material misrepresentations were undertaken without observation of separate corporate forms, and were presented in documents and communications as being made by the John Wood Group organization generally, or by other affiliate entities without consistent or clear delineation of responsibilities.

95.     GRP reasonably relied on Defendants' material misrepresentations and omissions when agreeing to test procedures developed and then manipulated by Defendants, including evaluation by "third-party engineers" corrupted by Defendants.  GRP continued waiting for

completion of the proper test procedures while the Plants continued to suffer performance failures, until later learning of Defendants' improper actions and corruption of the test processes.

96.    GRP suffered damages as the direct result of Defendants' fraudulent conduct. GRP agreed to pay MasTec $42,000,000 and to grant certain conditional releases as part of the GRP-MasTec Settlement Agreement. GRP's business has been severely harmed in an amount to be proved at trial. The modifications to the Plants developed as solutions by Defendants has required extensive additional repairs and has led to lost revenue and degradation of the functional longevity of the Plants. The Plants continue to experience difficulties and to reveal latent problems stemming from Defendants' conduct.

97.    All of the aforementioned material misrepresentations and omissions were made with Defendants' knowledge, for the express purpose of reducing liability and other costs to Defendants by covering up defects in Defendants' work with inadequate solutions and convincing GRP to make payments to MasTec and to offer conditional releases that would further absolve Defendants.

## COUNT V

### Negligent Misrepresentation

98.    The allegations contained within paragraphs 1 through 97 are incorporated herein by reference as if fully set forth herein.

99.    When addressing issues with its work proposing modifications to GRP meant to resolve defects in the Plants, including modifications to the Plants' Boilers and Boiler Feedwater Pumps, Defendants omitted material information that it knew or foreseeably should have known would have been relied on by GRP when accepting the modification proposals and agreeing the GRP-MasTec Settlement Agreement. Such material information included concerns expressed by

employees and/or suppliers that the design or procurement of key Plant component was fundamentally flawed, and other information that affected evaluation of the efficacy of the modifications.

100.    The Plant modifications developed for GRP were made with the false representation that the modifications would resolve problems with Plant components designed by Defendants and would not have additional materially detrimental effects, even though Defendants knew or should have known based on the information available to them, and not shared with GRP, that it was unlikely that the modifications would be successful, and that it was likely that the modifications would cause additional materially detrimental effects.

101.    Defendants were negligent in making the false representations and omissions regarding the modifications that were incorporated into the GRP-MasTec Settlement Agreement and knew or should have known that material information provided to GRP was false or omitted.

102.    Defendants owed a duty to GRP not to supply false information or to omit material information when proposing modifications that would be incorporated into the GRP-MasTec Settlement Agreement

103.    GRP reasonably relied on the false information and omissions by Defendants when Defendants developed modifications to address problems with Plant components, and entered into the GRP-MasTec Settlement Agreement based on such reliance.  Defendants' supply of false information and material omissions to GRP were made for the purpose of GRP considering such information (and lacking knowledge of the omitted information) when entering into the GRP-MasTec Settlement Agreement.

104.    GRP suffered damages as the direct result of Defendants' negligent misrepresentations and omissions.  GRP agreed to pay MasTec $42,000,000 and to grant certain

conditional releases as part of the GRP-MasTec Settlement Agreement. GRP's business has been severely harmed in an amount to be proved at trial. The modifications to the Plants developed as solutions by Defendants has required extensive additional repairs and has led to lost revenue and degradation of the functional longevity of the Plants. The Plants continue to experience difficulties and to reveal latent problems stemming from Defendants' conduct.

## COUNT VI

### Breach of Express Warranty (AFWIPC)

105.    The allegations contained within paragraphs 1 through 104 are incorporated herein by reference as if fully set forth herein.

106.    AFWIPC provided express warranties for the benefit of GRP, as the owner of the Plants.

107.    MasTec obtained subcontractor warranties from AFWIPC pursuant to its obligations under the EPCs with GRP. Pursuant to Article 14.4 of the EPCs, such warranties were to be assigned to GRP following the contractually defined Primary Warranty Period.

108.    All existing warranty obligations related to the Plants were maintained in the GRP-MasTec Settlement Agreement. The GRP-MasTec Settlement Agreement attached updated warranty registers for each Plant, which listed AFW as the party directly responsible for certain outstanding warranties.

109.    GRP is in privity with AFWIPC for the purpose of enforcing AFWIPC's express warranties related to the Plants.

110.    AFWIPC breached these warranties by failing to deliver the well-functioning Plant components that it had promised, and by failing to remediate issues identified as items to be addressed based on AFWIPC's warranties.

111.    AFWIPC failed to share results of investigations into warranty issues as part of its warranty obligations, and in some instances hid these results to conceal that the warrantied issues had not been properly remediated.

112.    AFWIPC then continued to breach the warranties that carried through pursuant to the GRP-MasTec-Settlement Agreement by refusing and/or failing to remediate problems, even when specifically identified by GRP, and by failing to cooperate with GRP to address AFWIPC's warranties in a commercially reasonable manner.

113.    GRP has suffered damages as the direct result of Defendants' breaches of warranties.  GRP has been required to make extensive additional repairs to correct issues for which AFWIPC was responsible based on its warranties.  Such repairs have not resolved all problems caused by AFWIPC's breaches, as unaddressed problems subject to warranty have led to lost revenue and degradation of the functional longevity of the Plants. The Plants continue to experience difficulties and to reveal latent problems in items subject to warranty provided by AFWIPC.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff GRP demands judgment against Defendants as follows:

A.    Compensatory damages to replace the value paid by GRP for the Plants, in an amount in excess of $250,000,000;

B.    Punitive damages for Defendants' gross negligence and willful misconduct;

C.    Any such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs request trial by jury on all issues so triable.

Respectfully submitted this 6th day of November, 2023.

  */s/ J. Timothy McDonald*_____
THOMPSON HINE LLP
J. Timothy McDonald
Tim.Mcdonald@thompsonhine.com
GA Bar No. 489420
Two Alliance Center
3560 Lenox Road NE, Suite 1600
Atlanta, GA 30326-4266
(404) 407-3623

GIBBONS, P.C.
*Peter J. Torcicollo
*Damian V. Santomauro
*Charles S. Korschun
*Andrew J. Marino
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Plaintiffs*
*GRP-Madison, LLC; GRP-Franklin, LLC; and*
*Georgia Renewable Power, LLC*

*pro hac vice* application pending