```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                       ATHENS DIVISION
```

```
GEORGIA RENEWABLE POWER, LLC,    *
GRP-MADISON, LLC, and GRP-
FRANKLIN, LLC,                   *

     Plaintiffs,                 *

vs.                              *

                                 *   CASE NO. 3:23-cv-128 (CDL)
AMEC FOSTER WHEELER INDUSTRIAL   *
POWER COMPANY, INC., AMEC
FOSTER WHEELER USA CORPORATION,  *
AMEC FOSTER WHEELER NORTH
AMERICA CORPORATION, and WOOD    *
GROUP USA, INC.,
                                 *
     Defendants.
                                 *
```

O R D E R

Plaintiffs Georgia Renewable Power, LLC, GRP-Madison, LLC, and GRP-Franklin, LLC (hereinafter referred to collectively as "GRP") brought this action alleging negligent design, negligent construction, professional negligence, fraud, negligent misrepresentation, and breach of warranty. Defendants have filed two motions to dismiss GRP's complaint for failure to state a claim. One (ECF No. 25) was filed jointly by AMEC Foster Wheeler North America Corporation ("AFWNA") and Wood Group USA, Inc. ("Wood"). The other (ECF No. 36) was filed jointly by AMEC Foster Wheeler Industrial Power Company, Inc. ("AFWIPC") and AMEC Foster Wheeler USA Corporation ("AFWUSA"). For the reasons that follow, both motions to dismiss are denied. Additionally, the motions

requesting hearings on the motions to dismiss (ECF Nos. 27 and 37) are terminated as moot.

## STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

GRP alleges the following facts in support of its claims. The Court must accept these allegations as true for purposes of the pending motions. GRP retrofits old power plants to run on renewable energy and constructs new power plants designed to run on biomass fuels such as dead wood and animal waste. GRP engaged

2

a company called MasTec to construct two biomass power plants in Georgia.[1] These plants were designed to generate power using wood-fired boilers. MasTec subcontracted with AFWIPC assigning it the responsibility of designing and constructing the boilers and several components of the boilers such as feedwater pumps and air heaters. AFWIPC was also required to provide services during the plants' commissioning (which is the initial testing period following the completion of the plants' construction).

AFWIPC's parent company is AFWNA. AFWIPC Corporate Disclosure Statement 1, ECF No. 44. AFWNA's parent company is Foster Wheeler, Inc. AFWNA Corporate Disclosure Statement 1-2, ECF No. 42. Foster Wheeler, Inc. also owns AFWUSA, making AFWUSA a corporate affiliate of AFWNA. AFWUSA Corporate Disclosure Statement 1, ECF No. 31. Although AFWIPC engineers initially handled the work on the plants, "AFWIPC's parent companies directed that it be transferred to a separate group within the AFW corporate organization" at which point the project was "dictated and managed by the corporate parents and affiliates of AFWIPC." Compl. ¶ 24, ECF No. 1. GRP further alleges that the AFW entities, which were motivated to reduce costs, were negligent in their work on the plants, knowingly employing a boiler design that was unsuitable for the plants' purposes. In constructing the boilers, they also

---

[1] MasTech is not a party to this action.

did not conduct appropriate quality control from suppliers and vendors resulting in defects in parts of the boilers such as the feedwater pumps. GRP alleges that while AFWIPC conducted this deficient work, the work was also "directed and shared by its parent and affiliate" companies "as alter egos of AFWIPC, without observation of distinct corporate forms or separation of work assignments and responsibility between distinct entities." *Id.* ¶ 60.

GRP alleges that in 2017, after the plant designs were completed, Wood acquired AFWIPC and its parent and affiliate companies in a merger. *Id.* ¶ 30. As GRP discovered the defects in the original design and construction of the plants, Wood and "the legacy corporate parents of AFWIPC . . . dictate[d] the response" to the issues and in doing so "did not adequately remediate the failures in AFWIPC's professional work consistent with industry standards." *Id.*

GRP noticed the issues with the plants and withheld final payment from MasTec, prompting settlement negotiations in which "Wood/AFW" participated. *Id.* ¶ 31. Wood and the AFW entities agreed to implement modifications that would fix the issues without resulting in a material reduction in the boilers' efficiency. However, GRP alleges that Wood and the AFW entities knowingly withheld from GRP information about the root causes of the plants' issues and that the modifications would likely not fix the issues

4

but would instead further negatively affect the boilers' efficiency and cause other problems for the performance, reliability, and longevity of the plants. They did this, GRP asserts, for the purpose of inducing GRP to sign settlement agreements resolving its issues with MasTec and the AFW entities' work on the plants.

GRP also alleges that Wood and the AFW entities, acting together as alter egos, inadequately performed the modifications they promised. Subsequently, they ran a manipulated test of one of the boilers and improperly presented data from this "test" to a third-party engineer designated to evaluate the modifications. *Id.* ¶¶ 40-51.

## DISCUSSION

In their two motions to dismiss, all Defendants argued that GRP's complaint should be dismissed because it constitutes impermissible "claim-splitting." Additionally, AFWUSA, AFWNA, and Wood argued that the complaint should be dismissed because the only basis for the claims against them was that they were parent or affiliate companies of AFWIPC. AFWNA and Wood argued further that the claims against them should be dismissed because they were not in contractual privity with GRP, the fraud and negligent misrepresentation claims asserted against them were not pled with sufficient particularity, and GRP did not plead facts sufficient

5

to establish personal jurisdiction over them. The Court addresses each of these arguments in turn.

## I. Claim-Splitting

"The claim-splitting doctrine: (1) 'requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit,' and (2) applies where a second suit has been filed before the first suit has reached a final judgment." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (quoting *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 840 n.3, 841 (11th Cir. 2017)). Claim-splitting "has been analyzed as an aspect of res judicata or claim preclusion" and the "test for claim-splitting 'is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit.'" *Vanover*, 857 F.3d at 841 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011)).

Here, GRP previously filed a petition to compel arbitration of the claims it now asserts in this action.[2] The Court denied that petition to compel arbitration, which GRP appealed. While the appeal was pending, GRP filed this action to prevent the statute of limitations from running on its underlying claims. GRP ultimately moved to voluntarily dismiss the appeal, which was

---

[2] See *GRP-Madison LLC et al. v. AMEC Foster Wheeler Indus. Power Co. et al.*, 3:23-cv-31.

granted by the Eleventh Circuit Court of Appeals on November 18, 2024, ending that action.

Defendants argue that GRP is claim-splitting because GRP filed this action while the previous action was still on appeal and because this action arises from the same facts underlying the claims GRP sought to arbitrate in the previously filed action. The Court disagrees. The earlier action only concerned whether GRP could pursue arbitration of its claims in an already-existing arbitration. A final ruling in that action would not have addressed the merits of any of GRP's claims. Therefore, under claim preclusion principles, a final resolution of the previous action would not have precluded this action. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) ("Under res judicata, also known as claim preclusion, a *final judgment on the merits* bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action.") (emphasis added). Since the previous action to compel arbitration, if final, would not necessarily "preclude [this] second [action]," particularly if the claims were found not to be arbitrable, the claim-splitting doctrine does not apply here. *Vanover*, 857 F.3d at 841 (internal quotation marks omitted) (quoting *Katz*, 655 F.3d at 1218).

## II. Liability of Parent and Affiliate Companies

Wood, AFWUSA, and AFWNA all argue that Plaintiffs have not pled enough facts to state claims against them. Their argument ignores important factual allegations in the Complaint and reasonable inferences drawn from those allegations. First, GRP has pled facts which make it plausible that Wood, AFWUSA, and AFWNA are directly liable to GRP for their own actions. For example, GRP alleged that GRP contends that AFWIPC's deficient work was not only "directed" but also "shared by its parent and affiliate" companies. Compl. ¶ 60. From this, the Court can reasonably infer that some of the alleged conduct, such as the negligent design or construction, was shared by AFWUSA, AFWNA and AFWIPC, jointly. Additionally, GRP alleges that Wood, after its merger with the AFW entities, "dictate[d]" how AFWIPC and its affiliated corporate entities responded to GRP's issues with the boilers. *Id.* ¶ 30. Thus, Wood could also be found directly liable for the negligently designed and constructed modifications meant to alleviate the initial issues with the boilers. Finally, GRP alleges that Wood and the AFW entities were involved in the misrepresentations meant to induce GRP to sign a settlement with MasTec, such that any of these companies could be found liable for GRP's fraud and negligent misrepresentation claims, assuming GRP's allegations are true. The Court does not interpret Plaintiffs' complaint to simply allege

8

that the Defendants may be liable based solely on their corporate affiliations.

Second, the Court further finds that Plaintiffs have made plausible allegations supporting alter ego or agency liability. "Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another." *Kissun v. Humana, Inc.*, 479 S.E.2d 751, 752 (Ga. 1997).[3] "In order to disregard the corporate entity because a corporation is a mere alter ego . . . it is necessary to show that the" parent or affiliate companies "disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities" of the parent or affiliate companies "no longer exist." *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005) (quoting *Heyde v. Xtraman, Inc.*, 404 S.E.2d 607, 610 (Ga. Ct. App. 1991)). This doctrine is applied "in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Id.* (quoting *Heyde*, 404 S.E.2d at 610).

---

[3] No party disputes that Georgia law applies.

Here, GRP alleged that the wrongful actions taken by the Defendants were done jointly by all Defendants "as alter egos of AFWIPC, without observation of distinct corporate forms or separation of work assignments and responsibility between distinct entities." Compl. ¶ 60. By alleging that the corporate parents and affiliate Defendants directed and dictated AFWIPC's actions without adhering to the distinct corporate identities of these companies, GRP has alleged that AFWIPC was serving as a "mere alter ego or business conduit" for them. *Kissun*, 479 S.E.2d at 752. GRP has sufficiently pled claims against Wood, AFWUSA, and AFWNA based on an alter ego theory. GRP has also pled that Wood, AFWUSA, and AFWNA dictated and directed AFWIPC's work, thus supporting agency liability. *See Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc.*, 642 S.E.2d 364, 365 (Ga. Ct. App. 2007) ("To prove actual agency, the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work."). Defendants' argument to the contrary is unpersuasive.

### III. Wood and AFWNA's Additional Arguments

The Court also finds Wood's and AFWNA's additional arguments unpersuasive. First, they argue that GRP's claims for negligent design, negligent construction, and professional negligence fail because they were not in privity of contract with GRP. Here, the only party who had any privity of contract with GRP was AFWIPC.

"[N]o privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract." O.C.G.A. § 51-1-11. However, Georgia courts have recognized that negligent construction claims "arise not from a breach of contract claim but from a breach of a duty implied by law to perform the work in accordance with industry standards" such that "[t]his cause of action arises in tort and exists independently of any claim for breach of contract." *Jai Ganesh Lodging, Inc. v. David M. Smith, Inc.*, 760 S.E.2d 718, 724 (Ga. Ct. App. 2014) (internal quotation marks omitted) (quoting *City of Atlanta v. Benator*, 714 S.E.2d 109, 116 (Ga. Ct. App. 2011)). Under this principle, the Court finds that Plaintiffs' negligence claims should not be dismissed at this stage of the proceedings.

Next, Wood and AFWNA argue that the claims against them for fraud and negligent misrepresentation should be dismissed because GRP failed to plead these claims with the specificity required by Federal Rule of Civil Procedure 9(b). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Assuming that this pleading principle applies to *negligent* misrepresentation claims, the Court finds that GRP has satisfied the heightened pleading standard. GRP alleged that Wood and the

11

AFW entities participated in the settlement negotiations between GRP and MasTec and, while doing so, knew but refused to tell GRP that "problems with the steam temperature control were unlikely to be fully resolved" by the proposed modifications to the boilers. Compl. ¶ 34. They also knew, but did not disclose, that "the Boiler Feedwater Pump modifications . . . were flawed and . . . unlikely to" fix deficiencies with the pumps. *Id.* ¶ 35. And, they knew, and did not disclose, that there were "unaddressed defects with the Plaint Air Heaters [that] were affecting Boiler performance" as well. *Id.* ¶ 37. They withheld this material information to induce GRP to agree to settle with MasTec, knowing that this information could materially alter GRP's position in the settlement negotiations. The Court finds that these facts, along with others pled by GRP, state with sufficient particularity the circumstances surrounding the alleged fraud and misrepresentation.

Finally, Wood and AFWNA argue that the claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because GRP failed to allege facts establishing that this Court has personal jurisdiction over Wood and AFWNA. "A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). The Georgia long-arm statute allows personal

12

jurisdiction over a nonresident Defendant who "[t]ransacts any business within" Georgia or "[c]ommits a tortious act or omission within" Georgia. O.C.G.A. § 9-10-91(1)-(2). Here, GRP has alleged that Wood and AFWNA transacted business in Georgia by taking part in the design and construction of the boilers and the modifications to the boilers for plants present in the state and committed a tort in Georgia by doing so negligently. Even if they did not do so directly, the Court has found that Plaintiffs have adequately alleged that AFWIPC, which undisputedly did transact business in Georgia and has been alleged to have committed a tort in Georgia, was acting as an alter ego or agent of Wood and AFWNA. *See Id.* (allowing the exercise of personal jurisdiction when the enumerated actions are done "in person or through an agent"); *Meier*, 288 F.3d at 1272 ("[I]f the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only . . . the subsidiary's business will be viewed as that of the parent.") (internal quotation marks omitted) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002)).

Having satisfied the Georgia long-arm statute, the Court must next make sure that the exercise of personal jurisdiction does not offend constitutional due process considerations. To the extent that the Georgia long arm statute is coextensive with due process,

13

that answers the question. But for the sake of thoroughness, the Court undertakes a separate due process analysis. "Due process requires that a non-resident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 1274. The required minimum contacts are different depending on the type of personal jurisdiction alleged. Here, GRP is alleging specific jurisdiction which "depends on an affiliation between the forum and the underlying controversy." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1228 (11th Cir. 2023) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Minimum contacts in this context are shown when a plaintiff's claims "arise out of or relate to at least one of the defendant's contacts with the forum" and when the "defendant purposely availed himself of the privilege of conducting activities within the forum state." *Id.* at 1229 (internal quotation marks omitted) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). Here, GRP's claims arise out of Wood and AFWNA's participation, directly and through AFWIPC as an agent or alter ego, in the designing and construction of the boilers in Georgia, the forum state. Additionally, they purposely availed themselves of the privilege of doing this business in Georgia by willingly participating in the design and construction of the boilers and in

14

the settlement negotiations concerning the plants, directly and through AFWIPC as their agent or alter ego.

Exercising personal jurisdiction over these Defendants certainly would not offend traditional notions of fair play and substantial justice. Wood and AFWNA's only argument against jurisdiction is that GRP is seeking to hold them liable not for any actions they took but merely because they are the parents or affiliates of AFWIPC. As previously explained, these Defendants read Plaintiffs' allegations too narrowly. Those allegations maintain that Wood and AFWIPC engaged directly in tortious conduct or, in the alternative, that AFWIPC did so as Wood and AFWNA's alter ego or agent. Thus, the exercise of jurisdiction over them does not offend due process.

## CONCLUSION

For the foregoing reasons, both pending motions to dismiss (ECF Nos. 25 and 36) are denied. The Court found that the briefing adequately informed the Court of the issues that needed to be decided, and thus oral argument on the motions was unnecessary. Accordingly, the motions for hearings regarding those motions (ECF Nos. 27 and 37) are terminated as moot.

IT IS SO ORDERED, this 7th day of April, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA